UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**Alan L. Carlson,**

        **Plaintiff,**

v.                                                                                   Civ. Action No.    3:21cv604

**Capital One Bank (USA), N.A.**

**SERVE:**   **1680 Capital One Drive**
             **McLean, Virginia 22102-3491**

        **Defendant.**

## COMPLAINT

COMES NOW Plaintiff, Alan L. Carlson, by counsel, for his Complaint against Defendant, Capital One Bank (USA), N.A. ("Capital One") Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681 et seq.

2. This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

3. In this case, the Defendant, Capital One erroneously furnished inaccurate, derogatory information that was reported on Plaintiff's credit reports. After Plaintiff disputed the inaccurate information with consumer reporting agencies ("CRAs") Experian, Trans Union and Equifax, Defendant failed to correct Plaintiff's credit reports.  That violated 15 U.S.C. §1681s-2(b).

### JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

1

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) - (2) because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District, as Defendant's credit reporting investigation employees and/or agents are located in Richmond, VA, and could only be subpoenaed to appear at trial in this District.

## PARTIES

6. Plaintiff is a natural person residing in Golden, CO and is also a consumer as defined by 15 U.S.C. § 1681a(c).

7. Defendant is a National Association in the business of servicing credit card accounts.

8. Defendant is a furnisher governed by 15 U.S.C. § 1681s-2.

9. Upon information and belief, third-party Trans Union is a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f).

10. Upon information and belief, third-party Equifax is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f).

11. Upon information and belief, third-party Experian is a "consumer reporting agency," as defined in 15 U.S.C. §1681a(f).

## FACTS

12. This case centers around a Capital One account *6572, which is the product of identity theft. Plaintiff did not open the account, make any of the transactions, or authorize anyone to make any of the charges.

13. The first time Carlson heard of this account was in or around February 2021, when he received a letter from Capital One's law firm stating they were attempting to collect the debt.

14. In response, Carlson sent a validation request to Capital One's attorneys.

15. On or around March 18, 2021, Carlson sent a letter to Capital One, telling them that he was concerned he was an identity theft victim, and requested a copy of the credit application filled out to open the account. To date, Carlson has not received any response to this letter.

16. On or around March 18, 2021, Carlson pulled his credit reports and noticed that the Capital One account was reporting false derogatory information, i.e. that Carlson owed the money, and that Carlson was past due and delinquent. Carlson disputed the inaccurate Capital One account with the consumer reporting agencies, who notified Capital One of Carlson's dispute via the e-Oscar system.

17. On or around March 29, 2021, Capital One's attorneys sent Carlson a letter purporting to validate the account, and attached 26 pages of statements, which was the first time that Carlson had ever received a statement on the account. Upon review, Carlson immediately determined that this account was identity theft because he did not open the account, and an imposter ran up about $10,000 in charges in the first 2 months. The charges had obvious signs of fraud, such as several hundred dollars at the grocery store every day, and the identity thief never made a payment on the account (all of which are tell-tale signs of identity theft, and considered red flags to Capital One's fraud investigators).

18. On April 30, 2021, Carlson again notified Capital One that he was an identity theft victim, that he did not open the account, or make any of the charges. Carlson further

advised Capital One that he had filed a police report, provided the case number, and also told Capital One about the obvious signs of fraud described above.  Carlson asked for proof of pictures and video surveillance from Capital One so that he could provide it to law enforcement.

19. By May 13, 2021, Carlson had been notified by the consumer reporting agencies that they would not be removing the fraudulent Capital One account from his credit reports because Capital One falsely and inaccurately informed the credit bureaus not to delete it. Carlson again disputed the false Capital One account with the credit bureaus, who again notified Capital One of the Carlson's dispute via the e-Oscar system.

20. By letter dated May 19, 2021, Capital One responded to Carlson's direct dispute letter, which in essence refused to believe that Carlson was an identity theft victim, and that no adjustments would be made.

28. Defendant intentionally choose not to comply with the FCRA in order to collect the account, and to save the company money in the form of wages, by designing a system of conducting faux "investigations" which consist of nothing more than matching basic data such as SSN, DOB, balance, etc.. Accordingly, Defendant's violations of the FCRA were willful. Defendant systemically refuses to note its accounts as still in dispute after it responds to a consumer's request for an investigation.

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681s-2(b)(1)(A) AND (B)

29. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

30. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

31. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C.§1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

32. When the Plaintiff mailed his detailed, written disputes and enclosures to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar," which has been adopted by the credit reporting agencies and by their furnisher-customers such as Defendant. It is an automated system and the procedures used by the CRAs are systemic and uniform.

33. When a CRA receives a consumer dispute, it (usually via an off-shore, outsource vendor), translates that dispute into an "ACDV" form.

34. The ACDV form is the method by which Defendant has elected to receive consumer disputes made to the CRAs pursuant to 15 U.S.C. § 1681i(a).

35. Based on the manner in which the CRAs responded to – or did not respond to - Plaintiff's disputes, representing that Defendant had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Experian, Trans Union and Equifax did in fact forward the Plaintiff's dispute via an ACDV to Defendant.

36. Defendant understood the nature of the Plaintiff's disputes when it received the ACDVs from Trans Union and Equifax, particularly because on at least one occasion, a credit bureau attached a copy of Plaintiff's dispute letter(s) as an "image" to the ACDV. Pursuant to the contract between the credit bureaus and Defendant, whenever Defendant responds to an ACDV, it certifies that it has read and considered all images attached to the ACDV, and must check a box in

e-Oscar acknowledging the same before hitting the "verify" button. Nevertheless, Plaintiff alleges on information and belief, that Defendant did not even bother reading or considering his dispute letters attached as images to the ACDVs.

37. Notwithstanding the above, Defendant follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all Defendant does is review its own internal computer screen for the account and repeat back to the ACDV system the same information Defendant already had reported to the CRAs.

38. When Defendant receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

39. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

40. The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

41. The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a CRA.

42. Defendant was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

43. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Defendant intended its employees or agents to follow.

44. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)(C) and (D)**

45. Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and previous Counts).

46. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the Defendant inaccuracies within Plaintiff's credit files with Experian, Trans Union and Equifax without also including a notation that this debt was still disputed and had not been resolved, by falsely suggesting that the dispute had been resolved and by failing to correctly report results of an accurate investigation to each credit reporting agency.

47. Specifically, Defendant failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to Experian, Trans Union and Equifax.

48. On information and belief, Plaintiff alleges that Defendant rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

7

49. Defendant knew that the Plaintiff disputed the subject account on multiple occasions directly with Defendant and its agents.

50. The Plaintiff's disputes were, at a minimum, *bone fide*.

51. In fact, the Plaintiff's disputes were justified because the account was the product of identity theft and fraud.

52. Defendant was aware of the *Saunders v. B.B. & T.* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

53. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Defendant intended its employees or agents to follow.

54. On information and belief, the Plaintiff alleges that Defendant's employee or agent did not make a mistake (in the way in which he or she followed Defendant's procedures) when he or she received, processed and responded to the Experian, Trans Union and Equifax's ACDVs and did not include the XB code in the CCC field.

55. On information and belief, the Plaintiff alleges that Defendant has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

56. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

57. The violation by Defendant was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

58. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

By: _____*/s/*_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for the Plaintiff*